## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

MISHA SANDERS,

      Plaintiff,

v.                                                            Case No.  4:18-cv-267-WS/MJF

GIDDONS, *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

This section 1983 action is before this court on Defendants Giddons, Hamilton, and Smith's motion to dismiss (Doc. 58) and Plaintiff's response in opposition (Doc. 59). The undersigned respectfully recommends that Defendants' motion to dismiss be granted and Plaintiff's claims be dismissed for failure to state a claim upon which relief can be granted.

### I. FACTUAL ALLEGATIONS

The facts set forth below are taken from Plaintiff's third amended complaint and, only for purposes of Defendants' motion to dismiss, are assumed to be true.

Plaintiff Misha Sanders ("Sanders") suffers from gender dysphoria. Gender dysphoria is a condition "where persons perceive a 'marked incongruence' between their birth sex and 'their experienced/express gender.'" *United States v. Varner*, 948

F.3d 250, 254 n.2 (5th Cir. 2020). Sanders—born biologically a male—identifies as female. In the second amended complaint, Sanders stated: "plaintiff looks like a female with full breasts." (Doc. 45 at 10 ¶ 42; *see* Doc. 57 at 12).

Sanders is an inmate of the Florida Department of Corrections ("FDC"). On September 19, 2017, while Sanders was an inmate of the Wakulla Annex, FDC correctional officers conducted strip searches of all inmates who were being transferred from the Wakulla Annex to other correctional facilities. (Doc. 57 at 12 ¶ 3). That day, Sanders was being transferred to the Tomoka Correctional Institution. FDC staff, therefore, ordered Sanders to submit to a strip search.[1] (*Id.*). Upon entering the transport area, the FDC staff instructed Sanders to go to the "first stall to be stripped searched" by Giddons. (*Id.*).

Sanders informed Giddons that Sanders had gender dysphoria and identified as transgender. (Doc. 57 at 12 ¶ 4). Sanders also informed Giddons that the strip search should be conducted privately and away from the other inmates. Giddons told Sanders to not "waste his time" and to "strip or be left behind." (*Id.*). Sanders noticed

---

[1] A strip search requires the inmate to remove all clothing and includes a visual inspection of the anal and genital areas. Fla. Admin Code 33-602.204(2)(e)(3) ("When a strip search is to be made the inmate will remove all clothing, place it in a pile, then move away from it a few paces. The search will include hair, ears, and mouth (dentures to be removed). The entire body will then be checked including armpits, hands, pubic region, between the toes, soles of the feet, rectum and inner portions of the legs.").

that other "inmates and guards [were] standing around watching," but Sanders does not specify the number of individuals standing around or what parts of Sanders's body they could see when Sanders was in the stall. (*Id.* at 12 ¶ 6). Sanders, however, requested permission from Giddons not to remove undergarments. (*Id.* at 13 ¶ 8).

Defendant Giddons refused Sanders's request and ordered Sanders to remove all undergarments. Defendant Smith—who was searching an inmate in an adjacent stall—stopped the search he was conducting and said, "I've never seen this sick shit before." (*Id.* at 13 ¶ 9). After Sanders disrobed, Defendant Hamilton yelled: "What the hell, he has tits." (Doc. 57 at 13 ¶ 12). The three Defendants then began making comments such as: "You're sick"; you are "a disgrace"; and you should "be ashamed." (*Id.* at 13 ¶ 14).

Defendants did not touch Sanders during the search. Sanders does not state the exact duration of the strip search, but Sanders asserts that the search took no more than twenty-five minutes. (*See* Doc. 57 at 12 ¶ 1). After the search, Giddons instructed Sanders to dress and wait to be shackled. As Sanders was waiting to be shackled, Hamilton told Sanders that "women don't have dicks." (*Id.* at 13 ¶ 15).

In this section 1983 action, Sanders is suing Sergeant Giddons, Major Hamilton, and Officer Smith. Sanders asserts the following claims:

**Count One:**  Defendant Giddons violated FDC's policy and procedure regarding strip-searches of transgender inmates in violation of Sanders's Fourteenth-Amendment rights;

**Count Two:** Defendant Giddons violated Sanders's Eighth-Amendment rights during the strip search.

**Count Three:** Defendants Hamilton and Smith violated Sanders's Eighth-Amendment rights by participating in the strip search and failing to stop Giddons's allegedly inappropriate conduct during the strip search.

Sanders alleges only mental and emotional injuries. Sanders requests nominal damages, compensatory damages, and punitive damages.[2]  (Doc. 57 at 15).

## II. STANDARD

Motions to dismiss for failure to state a claim are governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that

---

[2] It is unclear whether Sanders is suing Defendants in their individual capacities, official capacities, or both. To the extent that Sanders seeks to sue Defendants in their official capacities, such claims would be barred by the Eleventh Amendment. *See Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) ("It is clear that Congress did not intend to abrogate a state's Eleventh Amendment immunity in Section 1983 damage suits, [and] Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages.") (internal citation and quotations omitted). The undersigned, therefore, presumes that Sanders is suing Defendants in their individual capacities.

is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted); *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). Bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Courts hold a *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers" and accordingly

construe them "liberally." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014) (citation omitted).

## III.  DISCUSSION

### A.   Fourteenth-Amendment Claim: Procedural Due-Process

Construing Sanders's complaint liberally, Sanders alleges that Giddons violated the Due Process Clause of the Fourteenth Amendment when he failed to adhere to the FDC procedure, which requires private strip searches of transgender individuals. (Doc. 57 at 7).

To state a claim under the Due Process Clause of the Fourteenth Amendment, a prisoner must allege "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994); *see Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011)*; Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

In the prisoner-plaintiff context, "[d]etermining whether one was deprived of a liberty interest presents a unique challenge" because prisoners "are already deprived of liberty in the ordinary understanding of the word." *Kirby v. Siegelman*, 195 F.3d 1285, 1290 (11th Cir. 1999). The Supreme Court has identified two situations in which a prisoner can be further denied a constitutionally protected liberty interest. *Id.* In order for an inmate to state a claim that prison officials

deprived him of a liberty interest in violation of due process,

> he must establish either that the "deprivation of [a] benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' or that "a change in [his] conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court."

*Fuller v. Gates*, 656 F. App'x 944, 946 (11th Cir. 2016) (quoting *Kirby*, 195 F.3d at 1291); *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Vitek v. Jones*, 445 U.S. 480, 492-93 (1980)).

Although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause, . . . these interests will be generally limited to freedom from restraint." *Sandin*, 515 U.S. at 483-84 (citation omitted). Procedural requirements set out in administrative regulations are not themselves constitutional mandates. *Magluta v. Samples*, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004). Thus, even if an officer violates a prison policy or regulation regarding strip searches, this is not necessarily the same thing as violating an inmate's liberty interest. *Thompson v. Souza*, 111 F.3d 694, 700 n.3 (9th Cir. 1997) (noting that the plaintiff could not make a claim that the violation of regulation relating to strip searches created a liberty interest); *Holland v. City of New York*, 197 F. Supp. 3d 529, 548 (S.D.N.Y. 2016) (holding that prison policies regarding strip searches did not create a liberty interest); *Marrow v. Pennsylvania*, No. 1:18-cv-00931, 2018 WL 4963982, at *7 (M.D. Pa. Oct. 15, 2018) (holding that cross-gender strip searches

did not constitute an atypical and significant hardship within the meaning of *Sandin v. O'Connor*); *Zunker v. Betrand*, 798 F. Supp. 1365, 1370-71 (W.D. Wis. 1992) (holding that a prison policy requiring that strip searches be conducted in private did not create a constitutionally-protected liberty interest).

Sanders has failed to allege that Defendants caused a deprivation of a liberty interest. Rather, Sanders alleges only that Defendant Giddons failed to comply with an FDC policy regarding strip searches. Because that FDC policy did not create a constitutionally-protected liberty interest, Sanders has failed to allege an essential element of a due-process claim. The District Court, therefore, should dismiss Sanders's claim that Giddons violated the Due Process Clause of the Fourteenth Amendment.[3]

## B.    Eighth-Amendment Claim: Sexual Harassment/Abuse

Construing the complaint liberally, Sanders appears to assert a claim of sexual harassment/abuse, in violation of the Eighth Amendment. (Doc. 57 at 7).

---

[3] To the extent Sanders is alleging a "substantive" due process claim, such a claim is subject to dismissal for failure to state a claim upon which relief can be granted. When a constitutional claim is covered by a specific constitutional provision—such as the Eighth Amendment—a court must analyze such a claim under the Eighth Amendment's standard. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998). Below, the undersigned has analyzed Sanders's claims under both the Eighth Amendment and the Fourth Amendment, and Sanders has failed to state a claim upon which relief can be granted under either Amendment.

The Eighth Amendment protects prisoners from the infliction of cruel and unusual punishments. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). The sexual abuse of a prisoner by a prison guard would constitute a cruel and unusual punishment. *Sconier v. Lockhart*, 946 F.3d 1256, 1266-67 (11th Cir. 2020). To state an Eighth-Amendment claim of sexual abuse/harassment against a prison official, a plaintiff must allege at least the following four elements:

(1)    the defendant knowingly touched the prisoner-plaintiff in a sexual manner or otherwise subjected the prisoner-plaintiff to sexual acts or conduct;

(2)    the defendant's conduct caused pain or injury to the prisoner-plaintiff;

(3)    the defendant acted without a penological justification; and

(4)    the defendant acted for the purpose of sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner-plaintiff.

*See Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020); *Sconier*, 946 F.3d at 1266-67; *Crawford v. Cuomo*, 796 F.3d 252, 257-58 (2d Cir. 2015); *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003); *Berry v. Oswalt*, 143 F.3d 1127, 1130 (8th Cir. 1998).

As to the first essential element, Sanders does not allege that any Defendant touched Sanders in a sexual manner, attempted to touch Sanders in a sexual manner, or even threatened to do so. More specifically, Sanders does not allege that any

Defendant touched Sanders's genitalia or breasts, attempted to do so, or threatened to do so. Likewise, Sanders does not allege that any Defendant engaged in sexual conduct or acts with Sanders, attempted to do so, threatened to do so, or invited Sanders to do so. Rather, Sanders alleges that Defendants made crude and offensive comments about Sanders.

Mere words—other than true threats of harm—are insufficient to state an Eighth-Amendment claim, even when such words are hurtful, rude, boorish, lewd, or insulting. *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (noting that taunts, even those that are "distressing" do not violate a prisoner's constitutional rights under the Eighth Amendment); *accord Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) ("Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment."); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (noting that the use of derogatory language "while unprofessional and deplorable, does not violate the Constitution"); *Barney v. Pulsipher*, 143 F.3d 1299, 1310 n.11 (10th Cir. 1998) (holding that severe acts of intimidation and "verbal harassment alone are not sufficient to state a claim under the Eighth Amendment"); *Bender v. Brumley*, 1 F.3d 271, 274 n.4  (5th Cir. 1993) (stating that allegations of verbal abuse as well as threatening language and gestures on the part of a correctional officer do not rise to the level of a constitutional

violation). Because Sanders has failed to allege at least one essential element of an Eighth-Amendment claim of sexual harassment/abuse by a prison guard, the District Court should dismiss this claim.

## C.    **Fourth-Amendment Claim: Unreasonable Search**

Sanders also alleges that the manner in which the Defendants conducted the strip search violated the United States Constitution.[4] (Doc. 57 at 7).

The Fourth Amendment prohibits unreasonable searches. U.S. Const. Amend. IV; *Bell v. Wolfish*, 441 U.S. 520, 558 (1979). A key purpose of the Fourth Amendment's reasonableness standard is to "safeguard the privacy and security of individuals against arbitrary invasions." *Delaware v. Prouse*, 440 U.S. 648, 654 (1979). What "is reasonable depends on the context within which a search takes place.'" *Maryland v. King*, 569 U.S. 435, 461-62 (2013) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985)).

Here, Defendants' search of Sanders occurred in a prison. "A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." *Bell*, 441 U.S. at 558. "Weapons, drugs, and alcohol all disrupt the safe operation" of a prison.

---

[4] Sanders's third amended complaint did not mention the Fourth Amendment. But it appears that Sanders intended to raise a claim under the Fourth Amendment, and this court has an obligation to construe liberally *pro se* pleadings.

*Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 332 (2012). "Inmates commit more than 10,000 assaults on correctional staff every year and many more among themselves." *Id.* at 333. A concealed weapon would enhance an inmate's lethality and poses a danger to other inmates, visitors, and prison staff.

In the prison context, therefore, "the Government must be able to take steps to maintain security and order at the institution and make certain no weapons or illicit drugs reach detainees." *Bell*, 441 U.S. at 540. "The 'normal activity' to which a prison is committed—the involuntary confinement and isolation of large numbers of people, some of whom have demonstrated a capacity for violence—necessarily requires that considerable attention be devoted to the maintenance of security." *Pell v. Procunier*, 417 U.S. 817, 826-27 (1974). Indeed, the States "have a compelling interest in security and order within their prisons." *Lawson v. Singletary*, 85 F.3d 503, 512 (11th Cir. 1996); *Harris v. Forsyth*, 735 F.2d 1235, 1235 (11th Cir. 1984); *Sullivan v. Ford*, 609 F.2d 197, 198 (5th Cir. 1980).

In light of the substantial danger that contraband poses in prisons and the need for security to protect inmates, staff, and visitors, prisoners have a reduced expectation of privacy. *Florence*, 566 U.S. at 328; *Hudson v. Palmer*, 468 U.S. 517, 525-28 (1984); *Lanza v. State of New York*, 370 U.S. 139, 143 (1962). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."

*Price v. Johnston*, 334 U.S. 266, 285 (1948); *Bell*, 441 U.S. at 546 ("A detainee simply does not possess the full range of freedoms of an unincarcerated individual."). In certain prison contexts, therefore, prison officials constitutionally can require prisoners to submit to strip searches, even when there is no probable cause or reasonable suspicion to believe that contraband will be found. *Bell*, 441 U.S. at 558; *Crawford*, 796 F.3d at 258; *Powell v. Barrett*, 541 F.3d 1298, 1300 (11th Cir. 2008) (en banc); *Padgett v. Donald*, 401 F.3d 1273, 1278 (11th Cir. 2005); *Harris v. Ostrout*, 65 F.3d 912, 915-16 (11th Cir. 1995).

A strip search, nevertheless, violates the Fourth Amendment when it is conducted in an unreasonable manner. *Cates v. Stroud*, 976 F.3d 972, 979 (9th Cir. 2020); *Moton v. Walker*, 545 F. App'x 856, 860 (11th Cir. 2013). When conducting strip searches, prison guards must conduct the search in a reasonable and non-abusive manner. *Bell*, 441 U.S. at 558; *Powell*, 541 F.3d at 1305; *Evans v. Stephens*, 407 F.3d 1272, 1281 (11th Cir. 2005). A strip search, for example, is unreasonable when it is conducted without a penological purpose or with the intent simply to inflict pain. *Harris*, 65 F.3d at 915-16. "[I]ntentional harassment of even the most hardened criminals cannot be tolerated by a civilized society . . . ." *Hudson*, 468 U.S. at 528.

In determining whether a strip search was reasonable, courts should consider at least the four *Bell* factors:

(1)    the scope of the intrusion;

(2)    the manner in which the search was conducted;

(3)    the place in which the search was conducted; and

(4)    the justification for the search.

*Bell*, 441 U.S. at 559; *Harris v. Miller*, 818 F.3d 49, 62-63 (2d Cir. 2016); *Powell*, 541 F.3d at 1305; *Roberts v. Rhode Island*, 239 F.3d 107, 110-11 (1st Cir. 2001); *Thompson*, 111 F.3d at 700-01.

**1.    *Scope of The Intrusion***

Here, Sanders indicated that Defendants subjected Sanders to a visual strip search, which is intrusive, as are all strip searches. *See Florence*, 566 U.S. at 341 (Alito, J., concurring) (noting that a strip search "is undoubtedly humiliating and deeply offensive to many"); *Fortner*, 983 F.2d 1024, 1030 (11th Cir. 1993) (noting that "people have 'a special sense of privacy in their genitals'"); *Calhoun*, 319 F.3d at 939 ("There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners."); *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981) (noting that people have "a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating").

But the strip search of Sanders was no more intrusive than the search discussed by the Supreme Court in *Bell v. Wolfish*. Sanders's search also was not the

most intrusive search that Defendants could have conducted, insofar as Sanders does not allege that Defendants searched Sanders's body cavities or touched him in any way. *See Stanley v. Henson*, 337 F.3d 961, 965 (7th Cir. 2003) (noting that the strip search was less intrusive insofar as it did not involve prison guards touching the plaintiff); *Justice v. Peachtree City*, 961 F.2d 188, 193 (11th Cir. 1992) (noting that a strip search is less intrusive when it does not involve a body-cavity search). Defendants also conducted the search with some protection of Sanders's privacy insofar as it was conducted in a stall, which also limited the scope of the intrusion. It is also true, however, that Defendants could have further limited the scope of the intrusion by having only one prison guard view Sanders's exposed body.

### 2.    *The Manner in Which Defendants Conducted The Search*

In determining whether a search was conducted in an unreasonable manner, the courts must take into consideration whether the search was conducted in a sanitary manner, whether the defendant used physical force, whether the defendant observed respect for the person's privacy, and the language used by the defendants. *Evans*, 407 F.3d at 1281. Although "there is no requirement that searches be delicately conducted in the least intrusive manner," they must be conducted in a "reasonable manner." *Id.*

Sanders does not allege that the Defendants used any physical force during the search. Sanders also does not allege that the search involved unsanitary or

unhygienic practices. As noted above, Defendants showed some limited respect for Sanders's privacy insofar as the strip search was conducted in a stall. Furthermore, Sanders did not complain about the manner in which Giddons conducted the actual visual inspection of Sanders.

Sanders alleges that Defendants made derogatory comments, which indicate a level of unprofessionalism. Such comments in themselves, however, do not "make an otherwise properly conducted search unconstitutional." *Evans*, 407 F.3d at 1282 (noting that "language has an impact on people and counts towards the unreasonableness of the manner of the search" but does not make an otherwise properly conducted search unconstitutional); *Roden v. Sowders*, 84 F. App'x 611, 613 (6th Cir. 2003) (holding that laughing at a plaintiff during a strip search did not render that search unconstitutional); *Dawson v. Anderson Cnty.*, 566 F. App'x. 369, 371 (5th Cir. 2014) (holding that "verbal abuse by a jailer alone" did not give rise to a Fourth Amendment claim for unreasonable strip search).

### 3.    *The Place in Which Defendants Conducted The Search*

Here, Defendants searched Sanders in a prison and more specifically, in a "stall" designed to protect an inmate's privacy. (Doc. 57 at 12 ¶ 3). Thus, according to Sanders's allegations, Defendant employed some measures to protect Sanders's privacy. *Polk v. Montgomery Cnty.*, 782 F.2d 1196, 1201 (4th Cir. 1986) (noting that the extent to which privacy is afforded to the person strip searched is relevant to

assessing reasonableness); *Collins v. Knox Cnty.*, 569 F. Supp. 2d 269, 284 (D. Me. 2008) (holding that a strip search of an inmate did not violate the Fourth Amendment when it was conducted in a shower stall changing area that afforded some minimal privacy). Additionally, Sanders alleged that Defendants conducted the search of Sanders in the same location where other prisoners were searched before the FDC transported them elsewhere. This further indicates that the search was conducted in a reasonable manner and that Sanders was not subjected to an impromptu search in an isolated location not typically used for strip searches.

### 4.   *Justification for The Search*

According to Sanders, the strip search was conducted prior to the FDC's transportation of inmates—including Sanders—to another prison. (Doc. 57 at 12 ¶¶ 1-4, 13 ¶ 15). Thus, Sanders does not allege that Defendants singled out Sanders for a strip search.[5] Sanders's allegations indicate that the FDC performs strip searches

---

[5] Sanders alleges that Giddons was "[c]hecking to see if Plaintiff had a vagina in front of a room full of male staff and male inmates." Under the Fourth Amendment, however, the subjective intent of a defendant is irrelevant to reasonableness. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989) (noting that an "officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force"). Reasonableness, rather, is assessed in objective terms. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996).

Furthermore, FDC policy requires an inmate to remove undergarments and submit to a visual inspection of the entire body:

> When a strip search is to be made the inmate will remove all clothing, place it in a pile, then move away from it a few paces. The search will

on all inmates who are being transferred to another prison. It is obvious—and Sanders does not allege otherwise—that the FDC strip searches inmates in transit to prevent the "introduction and movement of contraband." Fla. Admin. Code r. 33-602.204(2)(b); *see Bell*, 441 U.S. at 559 ("A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons and other contraband is all too common an occurrence."). As noted above, States "have a compelling interest in security and order within their prisons." *Lawson*, 85 F.3d at 512; *Harris*, 735 F.2d at 1235; *Sullivan*, 609 F.2d at 198.

The conduct Sanders describes certainly was unprofessional and insensitive. Based on Sanders's allegations, however, it is apparent that the scope of the intrusion, the place where the Defendants conducted the search, and the justification for the search were reasonable. Other than the derogatory comments—and the fact that Smith elected to view Sanders's unclothed body without any apparent penological justification—the manner in which the Defendants conducted the search

---

include hair, ears, and mouth (dentures to be removed). The entire body will then be checked including armpits, hands, pubic region, between the toes, soles of the feet, rectum and inner portions of the legs.

*See* Fla. Admin Code 33-602.204(2)(e)(3). Consistent with this policy, Sanders noted that Defendants were strip searching other inmates whom the FDC was transferring to other prisons.

also was reasonable. Sanders, therefore, has not sufficiently alleged a violation of the Fourth Amendment.

Accordingly, the District Court should dismiss this count for failure to state a claim upon which relief can be granted.

### 5. *Defendants Also Would Be Entitled to Qualified Immunity*

Even if Sanders had stated a Fourth-Amendment claim upon which relief could be granted, Defendants would be entitled to qualified immunity.

"Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To be entitled to qualified immunity, the defendant must first establish that he was acting within the scope of his discretionary authority." *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013)). There is no dispute here that Defendants were acting within their discretionary authority as correctional officers employed by the state.

The burden, therefore, "shifts to the plaintiff to establish that qualified immunity is not appropriate." *Id*. In resolving questions of qualified immunity,

courts engage in a two-pronged inquiry. *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1319, 1325 (11th Cir. 2016) (resolving question of qualified immunity at motion to dismiss stage). At the motion to dismiss stage, the first prong applies the *Twombly-Iqbal* plausibility standard and asks whether the plaintiff's complaint contains sufficient factual matter to state a plausible violation of a constitutional right. *Id.* at 1319 (citations and internal quotations marks omitted). The second prong asks whether that right was clearly established at the time of the defendant's conduct. *Id.* at 1325.

"Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 583 U.S. ___, 138 S. Ct. 577, 589 (2018) (internal quotation marks and citations omitted). The clearly established law requirement provides government officials with the ability to anticipate what conduct will give rise to liability for a constitutional violation. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). This imposes an objective standard, and that objective standard is "measured by reference to clearly established law." *Harlow*, 457 U.S. at 818.

Page 20 of 26

Because this objective standard is fundamental to the qualified immunity defense, a court must determine if the law was clearly established at the time the incident occurred. As the Supreme Court explained:

> If the law at the time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful . . . .  If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.

*Harlow*, 457 U.S. at 818-19.

Authoritative judicial decisions may "establish broad principles of law" that are clearly applicable to the conduct at issue, and it may also be obvious from "explicit statutory or constitutional statements" that certain conduct is unconstitutional. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1209 (11th Cir. 2007). Courts need not point to "'a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate.'" *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (per curiam) (quoting *al–Kidd*, 563 U.S. at 741).  A court also must consider the law "in light of the specific context of the case, not as a broad general proposition . . . ."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  In other words, the facts of the case before the court must be materially similar to the facts in the precedent that clearly establishes the deprivation. *See Merricks v. Adkisson*, 785 F.3d

553, 559 (11th Cir. 2015) (citation omitted). In short, to be "clearly established," the precedent must give officials clear warning of unconstitutional conduct. *Id.*

In considering the law to do this analysis, the district court should compare the facts of the case before the court that allege a constitutional deprivation with those cases that the party opposing the motion contends show the clearly established nature of the law. As the Eleventh Circuit has explained:

> For qualified immunity purposes, a pre-existing precedent is materially similar to the circumstances facing the official when the specific circumstances facing the official are enough like the facts in the precedent that no reasonable, similarly situated official could believe that the factual differences between the precedent and the circumstances facing the official might make a difference to the conclusion about whether the official's conduct was lawful or unlawful, in the light of the precedent.

*Id.* at 559 (internal quotation marks omitted).

Here, even if Defendants conducted an unreasonable search of Sanders, Sanders has not alleged a violation of a right whose contours were sufficiently clear such that Defendants would have known that their conduct was unlawful. "Seldom does a general standard such as 'to act reasonably' put officers on notice that certain conduct will violate federal law given the precise circumstances before them: Fourth Amendment law is intensely fact specific." *Evans*, 407 F.3d at 1283. There is no decision issued by the Supreme Court or the Eleventh Circuit that clearly establishes

that Defendants' conduct violated Sanders's rights under the Fourth Amendment.[6] As noted above, Defendants searched Sanders prior to transferring inmates from one correctional facility to another facility. Sanders was afforded some privacy insofar as the Defendants conducted the strip search in a dedicated "stall." Defendants did not use force on Sanders or conduct the search in any unsanitary way. According to Sanders, the officers used abusive language and Smith apparently viewed Sanders's unclothed body without any penological justification. Although Sanders alleges unprofessional and insulting conduct, that did not necessarily make the strip search "unreasonable" for purposes of the Fourth Amendment. *Id.* at 1282 ("We do not imply that words alone can make the manner of an otherwise properly conducted search unconstitutional under the Fourth Amendment."); *Edwards*, 867 F.2d at 1274 n.1 (noting that taunts, even those that are "distressing" do not violate a prisoner's constitutional rights under the Eighth Amendment).

Accordingly, Defendants would be entitled to qualified immunity for Sanders's Fourth-Amendment claim. This provides yet another reason to dismiss Sanders's Fourth-Amendment claim.

---

[6] Although the Eleventh Circuit addressed the reasonableness of a strip-search of pre-trial detainees in *Evans*, the facts of the case are materially distinguishable from Sanders's situation.

**D.**    **Eighth-Amendment Claim:  Failure to Intervene and Protect**

Sanders also alleges that Hamilton and Smith violated the Eighth Amendment
to the extent they did not correct Giddons's alleged misconduct.

Under the Eighth Amendment, a prison guard may be liable for failing to take
reasonable steps to protect an inmate from a constitutional violation committed by
other prison officials. *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002). To
state a claim of failure to intervene, a plaintiff must allege the following essential
elements:

(1)    the defendant acted with deliberate indifference when he knew that a
state employee was violating a constitutional right of plaintiff;

(2)    the defendant was in a position from which he reasonably could have
intervened to protect plaintiff from the violation of his constitutional rights; and

(3)    the plaintiff suffered harm from the defendant's failure to intervene.
*Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008) (Fourth Amendment
case); *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007) (Fourth
Amendment case); *Skrtich*, 280 F.3d at 1302 (Eighth Amendment case); *Priester v.
City of Rivera Beach*, 208 F.3d 919, 924 (11th Cir. 2000) (Fourth Amendment case).

As discussed above, Sanders failed to allege that Defendants inflicted serious
physical harm. Sanders also failed to allege an imminent danger of physical harm.
Rather, Sanders alleged only that Defendants uttered insults which were mean and

crude. A prison guard's Eighth Amendment duty to intervene arises only when serious harm to a prisoner is occurring or is imminent. *See Velazquez*, 484 F.3d at 1341. The Eighth Amendment does not impose a duty on a prison guard to protect inmates from insults and unkind words. *Edwards*, 867 F.2d at 1274 n.1. Sanders's allegations simply are insufficient to state an Eighth-Amendment failure to intervene claim. The District Court, therefore, also should also dismiss this claim.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.      The Defendants' motion to dismiss (Doc. 58) be **GRANTED**.

2.      This civil action be **DISMISSED** with respect to all Defendants for Plaintiff's failure to state a claim upon which relief can be granted.

3.      The clerk of the court close the case file.

At Pensacola, Florida, this 13th day of April, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon**

**all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**